UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE[1], <br><br>        Plaintiff, <br><br>v. <br><br>Beth Devonshire, <br>Peter Wiernicki; Ed Cabellon, <br>and Beth Moriarty, <br>all in their individual <br>and official capacities, <br><br>        Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 16- <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff John Doe is a developmentally challenged first-year student enrolled at Bridgewater State University ("BSU" or the "University"). He is 19 years old. Throughout his lifetime, Doe has struggled, with admirable determination and success, to overcome profound emotional and intellectual deficits that have imposed upon him substantial educational challenges. Doe's deficits are, and always have been, apparent to his peer students. Consequently, he has historically been subjected to mistreatment and intimidation, and has been socially ostracized. Plainly stated, other students tend to view Doe as awkward and different, and many prefer not to be in his company. This case arises from and reflects a continuation of that unfortunate historical pattern.

On January 8, 2016, the University Office of Community Standards disciplined Doe for engaging in misconduct that, the University says, violated the BSU Student Code of Conduct.

---

[1] Plaintiff has filed, contemporaneously with this Complaint, a Motion to Proceed Pseudonymously.

Based on this determination, Doe was notified that he would be expelled from his residence hall and denied any University housing until at least January 2017. Because of his disabilities, Doe is incapable of living independently in any apartment or private housing proximate to BSU. Consequently, for Doe, the imposition of this sanction is the functional equivalent of expulsion from the University and termination of his prospects to obtain a college-level education and degree, and to secure for himself the future potential to live as a self-sufficient adult.

The "misconduct" that the University identifies as the basis for its disciplinary finding is remarkable. Specifically, the University concluded that on the evening of November 16, 2015, Doe engaged in Lewd Conduct necessitating his complete separation from all campus housing and related support. That misconduct comprises, in its entirety, a finding by the University that Doe, in the middle of the night, in the privacy of his own bed, under his own bedsheets, in the darkness of his own dorm room, masturbated. The University concludes that the above-described behavior violated Section 16 of Part III.B of the BSU Code of Conduct that penalizes and proscribes Lewd behavior.[2] There is no reason to believe that the University at any time in its prior history has disciplined a student for this behavior, nor is there any reason to believe that this "misconduct" is uncommon among the student population, including the student population presently residing, with the University's approval, in every single campus housing facility.

The imposition of the sanction described above followed what the University describes as an "investigation" conducted by the BSU Office of Community Standards into an unrelated complaint by a disgruntled roommate concerning the "cleanliness and upkeep" of their shared dorm room. The so-called investigation included, *inter alia*, formally "charging" Doe with lewd behavior based on a complaint made by one of Doe's two roommates, an individual who had

---

[2] Section 16 Part III B of the Student Code of Conduct provides: "conduct that is lewd or indecent such as public urination, public defecation, streaking, stripping or solicitation of a stripper."

advanced various complaints about Doe since the inception of their pairing, and with whom Doe was experiencing long-simmering tensions. This roommate claimed to have become aware that Doe was masturbating in the middle of the night, on the opposite side of the dorm room, in Doe's own bed and under Doe's own covers. The complainant told his RA that at approximately 1:00 a.m. he believed Doe was masturbating, but that he did not actually observe the "misconduct" because the room was dark, he could only make out Doe's face across their room, and because "it all happened under [Doe's] covers." The complaining roommate offered that "I think [Doe] thought I was asleep, but I wasn't." The third roommate neither complained about, nor is said to have been aware of, this alleged misconduct. It is not alleged that Doe exposed himself to anyone at any time, and it is not alleged that Doe took any action at any time in order to draw attention to the alleged "misconduct." To the contrary, the complaining roommate said he believed Doe was "trying to cover it up."

The report of the "investigation" conducted by BSU Associate Director of Community Standards, Peter Wiernicki, makes apparent that Defendant failed at all points during the investigation to provide Doe (a disabled young man actively engaged with the Disability Resources Center) any accommodation or assistance so that he could understand the potential consequences of the investigation and participate in a meaningful way in defending the charges against him. Incredibly, while denying his administrative appeal to the punishment and finding of lewd misconduct, BSU informed Doe that "[t]he University would have had no reason to know that you did not understand the process, because you never raised the issue with anyone in the [Office of Community Standards] or Disability Resources."

Neither the "misconduct" for which Doe was found responsible, nor the penalty for that alleged misconduct, appear to conform to the notice provisions and guidelines which the

3

University claims it is enforcing against Doe, in violation of his rights to procedural and substantive due process under the United States Constitution. Nor does the investigation, or the sanction which resulted therefrom, appear to be impartial, or applied equally to any other similarly situated student at any time in BSU's history.[3] Indeed, while the Findings and Recommendations Report of this (completely unremarkable) incident of student "misconduct" expressly identify "precedent regarding such an incident" as an important factor in determining Doe's sanction, no precedent is identified. The sanction imposed upon Doe here by BSU is not only unwarranted, it is arbitrary and capricious. Doe is among the small group of developmentally challenged individuals in greatest need of the support, accommodation and compassion that our public university system, when properly operated, can provide. BSU has dramatically failed him. The consequences of that failure will be disproportionally felt by this disabled young man, to his profound detriment, and for no discernable benefit to BSU or its student community.

## PARTIES

1.  Plaintiff John Doe is a 19 year-old male freshman student enrolled full-time at BSU; a resident of Bridgewater, Massachusetts and a citizen of the United States.

2.  Upon information and belief, Defendant Beth Devonshire is the Director of the Office of Community Standards at Bridgewater State University.

3.  Upon information and belief, Defendant Peter Wiernicki is the Associate Director of the Office of Community Standards at Bridgewater State University.

---

[3] The investigator of this incident, Peter Wiernicki, has reached similarly inexplicable "conclusions" involving Doe in the past. Doe was physically assaulted by one his roommates previously. After investigating the circumstances surrounding that incident, Mr. Wiernicki concluded that "[t]he belligerent environment created by [Doe] eventually resulted in [roommate] striking Doe." *Doe* received a disciplinary sanction as a result.

4. Upon information and belief, Defendant Ed Cabellon is the Appeals Officer assigned to Plaintiff's appeal from the sanction imposed by BSU.

5. Upon information and belief, Defendant Beth Moriarty is the Director of Residence Life and Housing at BSU.

6. The above-named defendants are being sued in their individual and official capacities.

## JURISDICTION AND VENUE

7. This court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

8. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because this is the district in which Plaintiff's claims arose.

## STATEMENT OF FACTS

9. Since a very young age, Doe has been diagnosed with severe emotional and learning disabilities including: (1) Generalized Anxiety Disorder; (2) Sensor Neural Hearing Loss and Disorder of Written Expression; and (3) Attention Deficit Hyperactivity Disorder. Doe takes medication to help address the symptoms of these disabilities.

10. Doe selected Bridgewater State University based, in part, on the University's Disability Resources Center. Indeed, the University touts this Center noting that: "Bridgewater State University is committed to ensuring all individuals equal access to its programs and services." In reasonable reliance on BSU's representations concerning his accommodations to students with disabilities, Doe enrolled at BSU in the summer of 2015. Upon his enrollment, Doe registered with the BSU Disability Resources Center and provided his entire disability history – including his high school Individualized Education Plan to BSU. Doe was assigned to

Ms. Pamela Spillane – a BSU Learning Disability Specialist – with whom he consulted with regularly to make sure that he was getting accommodations necessary to address his specific needs at the University.  At all times relevant to this case, BSU was aware that Doe suffered from severe emotional and learning disabilities.

**I.     BSU Accuses Doe of Lewd Conduct**

11.     According to the Findings and Recommendations Report completed by Defendant Wiernicki (a copy of which is attached to the Emergency Motion for a Preliminary Injunction contemporaneously filed under seal) (hereafter the "Report"), on or about November 18, 2015, one of Doe's roommates met with BSU Residence Director George Marshall.  During this meeting, the unidentified roommate[4] informed Residence Director Marshall that he "observed his roommate (DOE) masturbating in their room while he and their third roommate were present." The Report details interviews that Defendant Wiernicki conducted of both of Doe's roommates as well as Doe himself.  The Report expressly states that Doe denied the allegations against him. Indeed, a summary of Defendant Wiernicki's interviews with both of Doe's roommates expressly states that the complaining roommate never actually saw Doe in the alleged "act." Rather, the interview notes state:  "Q:  Did you actually see him masturbating?  A:  It all happened under his covers.  I could see his face from the light on his phone, but not much else." Finally the interview notes from Doe's other roommate expressly state:  "I don't want to kick him out (of the room)."   Notwithstanding these clear indications that the Doe's complaining roommate did not actually witness any alleged conduct or that Doe's other roommate did not want Doe removed from the dorm room – regardless of the alleged conduct, Defendant Wiernicki proceeded with his investigation and allegations.  Perhaps most importantly, nowhere

---

[4] Nearly all documents relating to the investigation into Doe's violation of the Code of Conduct Lewdness provision were redacted by the BSU Office of Community Standards.  As a result, Doe cannot ascertain the specific identity of the individuals responsible for allegations against him.

in the Report – or in any other document or statement involved in this BSU disciplinary proceeding against Doe, is there any indication that either of Doe's roommates was disturbed, shocked or offended by the conduct alleged against Doe.

12. Doe is getting along well with his current roommate and in fact his current roommate recently informed BSU that he and Doe are happy sharing a room together and have agreed to continue as roommates next year.

## II. BSU – Student Code of Conduct

### A. The Lewdness Provision

13. The University Student Code of Conduct "defines the responsibilities of students and provides a process for responding to allegations of student misconduct in a way that accords with the values of the University." Part III of the Student Code of Conduct sets forth certain "Proscribed Conduct." Among the various prohibited behavior is Section 16 that forbids "Conduct that is lewd or indecent such as public urination, public defecation, streaking, stripping, or solicitation of a stripper." It is this provision that Doe has been accused of violating. Indeed, at no time during any of the various proceedings leading up to the sanction imposed on Doe has the University alleged that the allegation that Doe masturbated in his dorm room amounts to a violation of any other Code of Conduct provision.

### B. The Code of Conduct Process

14. The Student Code of Conduct sets forth certain specific and mandatory procedures that must be followed when determining if a violation has occurred. In this case, the Community Standards Officer failed to follow such procedures. The result of this failure to follow the requisite procedures is the denial of Doe's due process rights.

15. Part IV of the Student Code of Conduct sets forth the Community Standards Procedures that must be followed "to adjudicate all violations of the Student Code . . . ." Specifically, Section A.3 of Part IV requires: "Generally, the Director of Community Standards or designee will assign a Community Standards officer(s) to the case who will investigate, schedule a conference with the respondent(s) and other individuals deemed necessary and appropriate." Section B.1 of Part IV requires: "The Administrative Review Conference is a meeting between a respondent and a Community Standards officer to review a complaint/incident, explain the Community Standards process, and possible options for resolving the matter." Section C.1 of Part IV of the Student Code of Conduct provides: "If a situation cannot be resolved in an Administrative Conference a full investigation will be conducted by the Community Standards Office ("investigator"). Section D.3.c of Part IV of the Student Code of Conduct provides: "The complainant, any alleged victim, and the respondent shall each have the right to: . . . Be informed about the Community Standards process."

16. The principles behind each of the above-cited Code of Conduct procedures is that the respondent be meaningfully informed of the allegations against him and be given a full and fair opportunity to offer a defense to the allegations. Notwithstanding the obligations to: (1) schedule a conference with necessary and appropriate individuals; (2) explain the Community Standards process; (3) conduct a full investigation; and (4) inform the respondent of the Community Standards process, the Community Standards Officer assigned to Doe's case did NOT follow these procedural requirements.

17. Specifically, Defendant Wiernicki did NOT consult with or in any way involve anyone from the Disability Resources Center at any point in the Community Standards process. As described in more detail below, Defendant Wiernicki was aware that Doe suffered from

significant disabilities – disabilities that prevented Doe from participating in a meaningful way in the Conference, Investigation or Review. In particular, BSU was aware that Doe suffered from Sensor Neural Hearing Loss and Disorder of Written Expression and, as a result, Doe was incapable of providing any meaningful assistance or defense to the allegations made against him. Moreover, the record indicates that Defendant Wiernicki took advantage of Doe's disabilities in convincing Doe to "plead" responsible to a prior code of conduct violation (see discussion in Section III infra).

18. The fact remains that the University was aware of Doe's disabilities and, notwithstanding this awareness, chose NOT to: (1) verbally explain that Doe was entitled to an accommodation in connection with the Code of Conduct process or (2) involve anyone from the Disability Resources Center in the Community Standards process so that accommodations could be made. Were accommodations made – e.g. making certain that an advisor was involved in the Community Standards process; or allowing the conference to take place over multiple meetings (similar to providing Doe additional time on an examination) so that Doe understood the allegations against him and the impact of the accused violations – Doe would have actually understood the process and would have been provided a chance to meaningfully participate in his defense.

19. The result of this failure to follow the University Community Standards procedures is the loss of Doe's housing privileges. Without housing, Doe cannot attend the University and his college career is over.

**C.     The Office of Community Standards Failed to Follow the BSU Code of Conduct In the Determination that the Underlying Facts Amounted to Lewd Conduct**

20.     Part IV, Section B.2 of the Student Code of Conduct expressly provides that "the Community Standards Officer will determine <u>appropriate</u> allegation(s) and/or violation(s) . . ." In this case, the Defendants wrongly determined that the underlying facts alleged against Doe amounted to Lewd Conduct (a violation of Section 16 of Part III.B of the Code of Conduct).

21.     The Code of Conduct describes lewd conduct as: "conduct that is lewd or indecent such as public urination, public defecation, streaking, stripping or solicitation of a stripper."  The examples provided in this provision make clear the type and nature of behavior that this provision is meant to prohibit is behavior of a public (not private) nature.  Three of the five examples given (public urination, public defecation and streaking) all expressly describe conduct that, if done in private, are entirely appropriate.  Indeed, both urination and defecation only amount to violations of the code if done publicly – it is only the "public" nature of this behavior that takes an otherwise normal bodily function and makes it lewd or indecent.  So too with streaking and stripping: certainly it is not the act of removing one's clothes that the Code of Conduct is attempting to prohibit.  Rather, it is the parading publicly without clothes (streaking) or the removal of ones clothes as a public show in exchange for money that makes this behavior lewd or indecent.  In the most simple terms, the determination – without explanation – that Doe's act of masturbating in his dorm room, under his covers, shielded from his roommates at 1:00 AM constitutes lewd conduct is wrong; and the severe sanction imposed is contrary to Doe's constitutional rights.

22.     In Defendant Wiernicki's December 10, 2015 Findings and Recommendations Report recommending the sanction to be issued on Doe, Wiernicki failed to identify a single

10

instance of any student in the history of BSU having his student housing rights terminated for masturbating in the privacy of his dorm room.

23. Nonetheless, on January 8, 2016, Defendant Devonshire informed Doe that his housing rights had been suspended until January 1, 2017 on the basis of Defendant Wiernicki's findings and recommendations. Doe filed an appeal of the suspension on January 15, 2016 and supplemented the appeal on February 11, 2016. On March 1, 2016, Defendant Cabellon informed Doe that his appeal had been denied and the suspension upheld, again on account of Defendant Wiernicki's findings and recommendations.

24. Doe has been given until March 6, 2016 to move out of BSU student housing.

### III. Prior Background

25. Doe was initially assigned to share a dorm room with two roommates. Having never been away from home before, Doe had trouble adjusting to life on campus. Adjustment was made more difficult due to Doe's disabilities and his fear that disclosure of such disabilities to his roommates would result in further alienation. In late September 2015, Doe was involved in an argument with one of his roommates. One Sunday, while all three roommates were throwing a "Squishie" ball, Doe accidently hit one of his roommates with the ball and an argument ensued. Doe's roommate's response to being hit with a soft ball was out of proportion – and as noted in the Office of Community Standards report – the roommate physically attacked Doe. Somehow, this roommate rough-housing and misunderstanding got blown out of proportion and resulted in Doe being accused of violating of the BSU Student Code of Conduct.

26. An investigation was launched by Defendant Wiernicki and ultimately Doe was charged with three violations of the Code: (1) Endangering Behavior; (2) Harming Behavior;

and (3) Disruptive Behavior. During an administrative conference between Doe and Defendant Wiernicki, Doe explained what had taken place.

27. Based on this explanation, Defendant Wiernicki chose not to find Doe responsible for Endangering Behavior or Harming Behavior, but convinced Doe that he should "take responsibility" and agree to be responsible for "Disruptive Behavior." At no time during this initial incident did Defendant Wiernicki or any of the other Defendants or any member of the BSU staff verbally explain to Doe that he could have assistance in managing the Student Code of Conduct investigation process. After convincing Doe to "plead" to a charge of Disruptive Behavior, Defendant Wiernicki instructed Doe to schedule an appointment with the Gosnold Counseling Center to have an anger assessment. Such assessment was completed and Doe was informed that he did NOT have an anger management problem. Doe was also instructed to complete 20 hours of community service which he has been working on without protest.

28. As a result of this incident, Doe was re-assigned to a new dorm room. The decision to re-assign Doe was undertaken cooperatively with the involvement of the Office of Community Standards and the Office of Residential Life. Specifically, during this reassignment, Defendant Wiernicki consulted with Pamela Spillane – his Disability Resources Center liaison – discussing Doe's profile with Defendant Wiernicki and explaining why a smaller dorm would be a more suitable accommodation for a student with Doe's disabilities. As a result of this consultation, Doe was re-assigned to a new dorm room with two new roommates.

29. The prior incident is relevant for several reasons. First, like the current Investigation, at no time during the prior incident did Defendant Wiernicki or anyone from the BSU Office of Community Standards explain to Doe that he was eligible for accommodation in the navigation of the Community Standards Investigation; or that Doe should seek assistance

from the Disability Resources Center (or anyone else for that matter) to better understand the allegations against him.  Second, because of Defendant Wiernicki's prior involvement, Wiernicki was aware that Doe was registered with the Disability Resources Center.  Indeed, Wiernicki communicated with Ms. Spillane during which she provided him information about Doe's disabilities.  Finally, according to Defendant Wiernicki's Report and Recommendation in the most recent incident involving the allegation that Doe violated the Lewdness provision of the Code of Conduct, the Sanction imposed on Doe was been based in part on Doe's prior conduct history.  This prior incident is the only other time Doe had been accused of violating the Student Code of Conduct; and presumably this prior record played an important part in the sanction imposed.  The fact remains that in both of Doe's interactions with the Office of Community Standards no one from BSU explained the Code of Conduct process or that Doe was entitled to accommodations in order to effectively and meaningfully defend himself against the charges.  Had the Code of Conduct process been explained – Doe NEVER would have "plead" to a charge of Disruptive Behavior.  Indeed, as the Defendant Wiernicki's Report and Recommendation in this case indicates – it was Doe who was attacked by his roommate in the first incident.  It is inconceivable that Doe – the victim of such aggressive behavior would be held responsible for a Code of Conduct violation.  Clearly, Doe did not appreciate the impact of "pleading" to a Code of Conduct violation for Disruptive Behavior.

**IV.   Residence Hall License Agreement**

30.   At or around the time Doe enrolled at BSU, Doe entered into a Residence Hall License Agreement ("Housing Agreement") with BSU.

31.   Paragraph 1 of the Housing Agreement entitles Doe to housing for the "entire academic year unless [the Housing Agreement] is terminated as specified in Section 27."

32. Section 27 provides that the University may only terminate the Housing Agreement "[u]pon reasonable notice and for good cause," which includes "failure to comply with … residence hall polices and regulations of the Universities."

33. Defendants' only stated reason for terminating Doe's housing rights is his alleged violation of the Student Conduct Code for allegedly masturbating in the privacy of his own dorm room.

## COUNT I

### (42 U.S.C. § 1983 and Fourteenth Amendment – Procedural Due Process)

34. Doe hereby incorporates each and every allegation in the preceding paragraphs numbered 1-33.

35. Pursuant to the Fourteenth Amendment to the United States Constitutes, Doe enjoys a property interest in his status as a student at the University and in the education he has undertaken to receive. Doe is unable to attend BSU without living in student housing and so the termination of Doe's student housing rights is equivalent to the termination of his property interest in his education.

36. Pursuant to the Fourteenth Amendment to the United States Constitution, Doe also enjoys a liberty interest in his reputation.

37. Pursuant to the Fourteenth Amendment, Doe also enjoys a right to equal protection of the laws, that is, to be treated like other persons to whom he is similarly situated.

38. Defendants violated Doe's Fourteenth Amendment rights to procedural due process by terminating Doe's housing rights and issuing a finding that he had engaged in lewd conduct without providing Doe a meaningful opportunity to be heard.

39. By failing to provide Doe with reasonable notice of the disciplinary process and by failing to provide Doe with reasonable accommodations, including without limitation by failing to accommodate Doe's disabilities, Defendants denied Doe his constitutional rights to notice of the allegations against him, to present evidence on his own behalf, and to contest the evidence against him.

40. Defendants also violated Doe's Fourteenth Amendment right to equal protection of the laws by instituting disciplinary proceedings against Doe on grounds for which Defendants have never instituted comparable disciplinary proceedings against similarly situated students and by sanctioning Doe for alleged conduct even though Defendants have never similarly sanctioned similarly situated students for similar conduct.

41. Defendants acted with reckless disregard for Doe's constitutional rights and Defendants actions constitute violation of Doe's rights under 42 U.S.C. § 1983 and the Fourteenth Amendment.

42. As a direct and proximate result of Defendants' actions, Doe has suffered and continues to suffer harm and damages.

## COUNT II

### (42 U.S.C. § 1983 and Fourteenth Amendment – Substantive Due Process)

43. Doe hereby incorporates each and every allegation in the preceding paragraphs numbered 1-42.

44. Pursuant to the Fourteenth Amendment to the United States Constitutes, Doe enjoys a property interest in his status as a student at the University and in the education he has undertaken to receive. Doe is unable to attend BSU without living in student housing and so the

termination of Doe's student housing rights is equivalent to the termination of his property interest in his education.

45. Pursuant to the Fourteenth Amendment to the United States Constitution, Doe also enjoys a liberty interest in his reputation.

46. Pursuant to the Fourteenth Amendment, Doe also enjoys a right to equal protection of the laws, that is, to be treated like other persons to whom he is similarly situated.

47. Pursuant to the Fourteenth Amendment, Defendants may not terminate Doe's student housing rights and by extension his property interest in his education unless such sanction bears a rational relationship to a legitimate state interest.

48. Defendants finding that Doe violated the BSU Student Code of Conduct is not based on a reasonable interpretation of any provision of the Student Code of Conduct or on any reasonable precedent.

49. Moreover Defendants have sanctioned Doe for alleged behavior that is widely understood to be prevalent among college students similarly situated to Doe even though Defendants have not identified a single instance of sanctioning another student for the same type of conduct.

50. The sanction issued against Doe does not bear any rational relationship to any legitimate state interest.

51. Defendants acted with reckless disregard for Doe's constitutional rights and Defendants actions constitute violation of Doe's rights under 42 U.S.C. § 1983 and the Fourteenth Amendment.

52. As a direct and proximate result of Defendants' actions, Doe has suffered and continues to suffer harm and damages.

## COUNT III

### (Breach of Contract)

53. Doe hereby incorporates each and every allegation in the preceding paragraphs numbered 1-52.

54. Doe entered into a Residence Hall License Agreement with Defendants that entitles Doe to housing for the full 2015-2016 academic year.

55. Defendants may not terminate the Residence Hall License Agreement except for good cause, which includes without limitation a resident's failure to comply with residence hall policies.

56. Defendants' only stated reason for terminating Doe's housing rights is Doe's alleged violation of the Student Conduct Code. However, Defendants' finding that Doe violated the BSU Student Code of Conduct is not based on a reasonable interpretation of any provision of the Student Code of Conduct or on any reasonable precedent.

57. Defendants terminated Doe's housing rights without good cause in violation of the Residence Hall Agreement and therefore breached the Residence Hall Agreement.

58. As a direct and proximate result of Defendants' actions, Doe has suffered and continues to suffer harm and damages.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter relief as follows:

1. Enter injunctive relief against the Defendants, Defendants' agents and employees, and all persons in active concert or participation with them, enjoining them from interfering with Doe's constitutional rights by continuing the suspension from student housing issued against him;

2. Enter injunctive relief against the Defendants ordering them to provide adequate accommodations to Doe in any hearing or proceeding brought or by the BSU Office of Community Standards or the BSU Office of Residence Life and Housing;

3. Retain jurisdiction of this matter for the purpose of enforcing this Court's order;

4. Award to Doe compensatory damages in an amount to be determined at trial;

5. Award Doe the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C.

6. Award such other relief as shall be required in the interests of justice.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff John Doe demands a trial by jury on all issues so triable.

/s/ Matthew S. Barrett
Michael H. Bunis (BBO # 566839)
Matthew S. Barrett (BBO #673882)
Jacqueline K. Mantica (BBO # 679551)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000

*Attorneys for John Doe*

Dated: March 3, 2016

**Certificate of Service**

I hereby certify that on March 3, 2016 a copy of the above-referenced document was served via e-mail on Massachusetts Assistant Attorney Generals Adam Hornstine and Joshua Jacobson, whom I have been informed have been assigned to represent the Defendants in this matter.

/s/ Matthew S. Barrett
Matthew S. Barrett

7312236v1